UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

No. _____

| | |
|---|---|
| DANIEL RUFTY LEGAL, PLLC, d/b/a Carolina Legal Services,<br><br>Petitioner,<br><br>v.<br><br>CAROLINA CLIENT SERVICES, LLC,<br><br>Respondent. | **VERIFIED PETITION TO COMPEL ARBITRATION**<br><br>[9 U.S.C. § 4] |

Petitioner Daniel Rufty Legal, PLLC d/b/a Carolina Legal Services ("Carolina Legal"), by and through undersigned counsel, hereby petitions the Court pursuant to § 4 of the Federal Arbitration Act ("FAA") to compel Respondent Carolina Client Services, LLC ("CCS") to arbitrate a certain dispute with Carolina Legal under the terms of the parties' Service Agreement (the "Agreement"). In support thereof, Carolina Legal shows the following.

**Parties**

1. Carolina Legal is a professional limited liability company organized and existing under the laws of the State of North Carolina.

2. The business of Carolina Legal primarily involves the provision of legal services in consumer credit-card debt defense matters.

3. Upon information and belief, CCS is a limited liability company organized and existing under the laws of the State of Delaware.

4. Upon information and belief, the business of CCS primarily involves marketing, lead generation, and the provision of administrative support, and law-related services to clients or prospective clients with consumer debt defense matters.

## Jurisdiction & Venue

5. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as the parties to this action are diverse, and there is more than $75,000 in controversy.

6. Venue lies in this Court pursuant to Part 9 of the Agreement.

7. Venue also lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) or, alternatively, (b)(3).

8. Finally, venue also lies in this Court pursuant to 9 U.S.C. § 4.

## Facts

### Various Agreements to Arbitrate

9. Carolina Legal has attached the Agreement hereto as Exhibit A and incorporates same by reference. Carolina Legal has also attached the parties' August 1, 2019, Amendment to Services Agreement ("Amendment") hereto as Exhibit B, and incorporates same by reference.

10. Part 9(f) of the Agreement contains the following broad arbitration provision (the "9(f) Clause"):

> Arbitration. Each signatory hereto hereby agrees that in the event of any dispute arising out of or by reason of this Agreement or the Services rendered or contemplated hereunder, or any other disagreement of any nature, type or description regardless of the facts or legal theories which may be involved, such dispute shall be resolved by confidential binding arbitration before American Arbitration Association ("AAA"), pursuant to the Federal Arbitration Act (9 U.S.C. 1, et seq.). Such dispute will be submitted to confidential binding arbitration only in Charlotte, North Carolina. Arbitration proceedings may be commenced by any signatory to this Agreement by giving the other parties hereto written notice thereof, and

the proceedings shall be governed by the rules of AAA. The arbitrator's award in any such proceeding shall be final and binding, and a judgment upon such award may be enforced by any court of competent jurisdiction. Each signatory hereby agrees to submit to the jurisdiction of any state or federal court sitting in Charlotte, North Carolina in any action or proceeding arising out of or relating to the enforcement of the arbitration provisions of this Agreement. Each signatory hereto hereby agrees to waive any defense of inconvenient forum to the maintenance of any action or proceeding so brought in Charlotte, North Carolina, and each signatory hereto waives any bond, surety, or other security that may be required of any other signatory with respect thereto. Notwithstanding the foregoing, as set forth elsewhere in this Agreement, there is a limited expedited right of arbitration.

11. That "limited expedited right of arbitration" appears in Part 2(g) of the Agreement (the "2(g) Clause"), which provides as follows:

> Processors. CAROLINA will consult with SERVICER before any change in payment processors based upon CAROLINA's determination of the best interests of its Applicable Clients. CAROLINA agrees that any payment processor must be independent of CAROLINA and SERVICER. The parties further agree that it may be advantageous to use separate processors for payment of fees and for consumer savings. The terms of any processing fee agreement must prohibit the freezing of any distribution of funds to SERVICER unless (i) this Agreement is terminated pursuant to the terms of Section 4, in which case the provisions of Section 4 shall govern, or (ii) (A) CAROLINA has provided to SERVICER and the payment processor a copy of the claim and demand for payment at least forty-eight (48) hours in advance of any payment if such demand constitutes an Accelerated Set-Off Claim (as defined in Section 2(h)), or at least thirty (30) days in advance if such demand is based on the indemnification provision or contribution provision of this Agreement; (B) the amount requested is not greater than (1) the total obligation of SERVICER on the particular matter as set forth in this Agreement, less (2) the amount available to CAROLINA in the Escrow Account (as defined in Section 3(a)(i)) plus the amount (if any) SERVICER has already paid in respect of the applicable matter as of the date the demand is delivered to the payment processor; (C) the matter for which CAROLINA seeks such funds as set forth in the demand meets the definition of Accelerated Set-Off Claim or the requirements of the indemnification provision or contribution provision of this Agreement; and (D) in the event of an Accelerated Set-Off Claim, any one of CAROLINA, CAROLINA's owners, CAROLINA's attorney-members, attorney employees, attorney contractors or local attorneys, is a defendant party to the relevant action or suit. <u>In the event that CAROLINA diverts funds from SERVICER as permitted under this Agreement, and SERVICER believes that CAROLINA is not entitled to the full amount that is being withheld</u>

>  from it and SERVICER exercises its dispute resolution rights under Section 9(f), then the expedited Judicial Arbitration and Mediation Service rules shall apply instead of the provisions set forth in Section 9(f), with the notice of arbitration and actual arbitration being completed in less than a month.

(Emphasis added).

### Respondent's Improper JAMS Demand for Arbitration

12. In or around November 2020, Carolina Legal terminated the Agreement with CCS, for cause due to CCS' numerous, repeated, material breaches of its obligations under the Agreement.

13. On or about December 3, 2020, CCS filed a Demand for Arbitration and Statement of Claim (the "Demand") with Judicial Arbitration and Mediation Services, Inc. ("JAMS"), purportedly in accordance with the Part 2(g) Clause. The Demand alleges three claims: for breach of contract, for breach of the covenant of good faith and fair dealing, and for declaratory relief. Carolina Legal has attached a copy of the Demand (without exhibits) hereto as Exhibit C.

14. The Demand alleges that "on or about November 13, 2020, Carolina Legal directed the payment processor to withholds [sic] fees owed to CCS under the Service Agreement."

15. CCS specifically alleges that "Carolina Legal breached the Service Agreement by withholding fees that CCS was entitled to under the terms of the Service Agreement, despite a lack of notice of CCS's breach of its obligations and despite Carolina Legal continuing to operate and provide legal services to its clients, within the scope of the services contracted to be provided by CCS under the Service Agreement."

16. As a result of the alleged breach, CCS seeks damages from Carolina Legal in the amount of $312,673.37 through November 13, 2020, plus an amount equal to $20,000 per day from November 13, 2020, through an unspecified end date.

17. CCS further sought arbitration pursuant to JAMS' expedited rules, to occur within one month of filing.[1]

18. The 2(g) Clause does not cover the dispute set forth in the Demand in Arbitration. Instead, the 2(g) Clause applies only where the parties agree that Carolina Legal is entitled to withhold fees from CCS pursuant to Part 2(g), see Ex. A, ¶ 2(g) ("[i]n the event that CAROLINA diverts funds from SERVICER <u>as permitted under this Agreement</u>" (emphasis added)), and CCS disputes <u>the amount</u> of the funds properly subject to diversion, see Ex. A, ¶ 2(g) ("and SERVICER believes that CAROLINA is not entitled to the full amount that is being withheld from it"). In such action, the use of expedited rules would be appropriate as the only thing in controversy, the proper amount of the diversion, would be a matter of accounting.

19. Instead, the action brought by CCS, including its breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief claims, are arbitrable under the the 9(f) Clause, which requires arbitration before the American Arbitration Association ("AAA") pursuant to the AAA Commercial Arbitration Rules.[2]

20. The 2(g) Clause also fails to permit arbitration before JAMS as it fails to select JAMS as the applicable arbitration organization; it says only that JAMS' expedited rules will apply, not who (i.e., which arbitration organization) will apply them.

---

[1] JAMS' expedited rules do not require arbitration within 1 month of the notice of arbitration. Instead, that requirement comes from the 2(g) Clause.

[2] The Agreement does not specify the rules that will apply to the parties' AAA arbitration, but the AAA Commercial Arbitration Rules state that "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] . . . of a domestic commercial dispute without specifying particular rules." Rule 1(a), AAA Commercial Arbitration Rules, https://adr.org/sites/default/files/Commercial%20Rules.pdf.

21. Finally, the 9(f) Clause does not apply (although it too calls for arbitration before the AAA), as the instant dispute arises out of the provisions of the original Agreement, and not any specific provision of the Amendment.[3]

22. The 9(f) Clause requires that the parties' arbitration take place, if at all, before the AAA, not JAMS.

23. CCS is in active and ongoing breach of its obligation to arbitrate pursuant to the terms of the Agreement, and Carolina Legal is entitled to an order compelling CCS to withdraw its Demand and re-file with the AAA.

**Prayer for Relief**

Wherefore, Carolina Legal respectfully prays the Court award it the following relief:

1. That the Court hear arguments on this petition pursuant to 9 U.S.C. § 4;

2. Enter an order compelling CCS to withdraw its Demand in Arbitration before JAMS and arbitrate with the AAA pursuant to Part 9 of the Agreement and § 4 of the FAA;

3. Alternatively, enter an order staying the JAMS arbitration until such time as the parties arbitrate the claims in the Demand before the AAA in accordance with Part 9(f) of the Agreement;

4. Award Petitioner its reasonable attorney's fees incurred in connection with the preparation of, filing of, and any proceedings on, this motion;

5. Tax the costs of this Petition to Respondent; and

6. Any other relief the Court deems just and proper.

This 3rd day of February, 2021.

---

[3] The Amendment reaffirmed the continued validity of Part 9 of the Agreement. *See* Ex. B ¶ 8 ("All terms and provisions of the Original Agreement, as modified by this Amendment, will remain in full force and effect.").

Respectfully submitted,

**WEAVER, BENNETT & BLAND, P.A.**

By: <u>/s/ Bo Caudill</u>
Bo Caudill
NC Bar No. 45104
bcaudill@wbbatty.com
196 N. Trade St.
Matthews, NC 28105
Tel: (704) 844-1400
Fax: (704) 845-1503
*Counsel for Carolina Legal*

I verify under penalty of perjury that the foregoing is true and correct.

<u>Daniel S. Rufty</u>