UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

3:21-cv-54

DANIEL RUFTY LEGAL, PLLC, d/b/a
Carolina Legal Services,

    Petitioner,

v.

CAROLINA CLIENT SERVICES, LLC,

    Respondent.

**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION TO COMPEL ARBITRATION**

### Introduction

Petitioner Daniel Rufty Legal, PLLC, d/b/a Carolina Legal Services ("Carolina Legal") had a Services Agreement (the "Agreement") with Respondent Carolina Client Services, LLC ("CCS"), that contained two separate arbitration clauses: (1) a clause applying broadly to "any dispute" arising under the Agreement, (Ver. Pet. to Compel Arb. (hereinafter, "Pet."), Ex. A (hereinafter "Agr.") ¶ 9(f)); and (2) a clause applying to the narrow circumstance in which Carolina Legal <u>properly</u> withheld payment under the terms of the Agreement, but CCS disputed the <u>amount</u> of the withholding, (Agr. ¶ 2(g)). The differences matter. An arbitration under provision (1) would take place before the American Arbitration Association (the "AAA") in Charlotte, North Carolina, in accordance with the AAA Commercial Arbitration Rules.[1] An arbitration under provision (3),

---

[1] The Agreement does not specify the rules that will apply to the parties' AAA arbitration, but the AAA Commercial Arbitration Rules state that "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] . . . of a domestic commercial dispute without specifying particular rules." Rule 1(a), AAA Commercial Arbitration Rules, https://adr.org/sites/default/files/Commercial%20Rules.pdf.

however, would involve application of the Judicial Arbitration and Mediation Services, Inc. ("JAMS"), "expedited . . . rules," with the "notice of arbitration and actual arbitration being completed in less than a month." (Agr. ¶ 2(g)).

Under these provisions, Respondent has improperly initiated an arbitration in the wrong forum. In November 2020, Carolina Legal terminated the Agreement and stopped paying CCS due to CCS' numerous, repeated, and material breaches of its obligations under the Agreement. (Pet. ¶ 12.) On or around December 3, 2020, Respondent filed its Demand for Arbitration and Statement of Claim ("Demand") with JAMS, alleging that Carolina Legal withheld payments with no legitimate basis and that such conduct constituted a breach of the Agreement and a breach of the implied covenant of good faith and fair dealing. (Pet. Ex. C (hereinafter, "Demand") ¶¶ 11-19.)[2] The Demand further asserted a vague claim for a declaratory judgment as to "the parties' respective rights and duties under the Service Agreement." (Demand ¶¶ 20-22.) CCS alleged that it was owed more than $300,000 for Carolina Legal's supposed breach, plus $20,000 per day for each day following November 13, 2020 (i.e., if legitimate, CCS' claim would have a value through January 18, 2021, of more than $1.6 million). (Demand p 3.) Nevertheless, CCS sought to have JAMS apply its expedited procedures and hold the arbitration "*less than a month*" from the submission of the Demand.

The claims in the Demand fall under the Agreement's broader arbitration clause, not the expedited JAMS clause. The latter requires an allegation—entirely missing from the Demand— that Carolina Legal properly withheld payment under the Agreement, but simply withheld too much. The Demand instead alleges that Carolina Legal had no basis to withhold any payment.

---

[2] Citations to paragraph numbers within the Demand refer to the allegations of the Statement of Claim, whereas citations to page numbers refer to allegations included with the JAMS Demand for Arbitration Form.

Whereas the former allegation would be a matter of accounting (i.e., determining which fees were subject to an otherwise proper withholding), the latter involves complicated questions of liability (i.e., whether and to what extent Carolina Legal's failure to pay CCS arose from CCS' misconduct or failure to perform its obligations under the Agreement).  CCS knows this, but filed before JAMS anyway, knowing that Carolina Legal had numerous high value claims against CCS that an expedited proceeding could not facilitate, and hoping that its JAMS Demand would result in a hurried arbitral award against Carolina Legal with potential preclusive effect.

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, requires CCS to honor its commitment to arbitrate the claims raised in the Demand before the AAA.  Those claims comprise the kind of dispute that the parties' broader arbitration provision was plainly intended to cover, and for which the AAA Commercial Rules will permit an adequate opportunity to resolve on the merits.

For these reasons, the Court should grant Carolina Legal's Petition to Compel Arbitration (the "Petition"), and order CCS to arbitrate its claims, if at all, before the AAA.[3]  Pursuant to 9 U.S.C. § 4, the Court may, following five-days' notice of this Petition to CCS, hold a hearing on the Petition to determine whether there is any issue for trial or, in the absence of such issue, whether the Petition should be granted.  Petitioner therefore respectfully requests that the Court place this matter on an expedited briefing schedule and set a hearing to occur pursuant to § 4 as soon as practicable after the five-day notice period.

---

[3] Pursuant to 9 U.S.C. § 4, the Court may, following five days' notice of this Petition to CCS, hold a hearing on the Petition to determine whether there is any issue for trial.  Petitioner, pursuant to § 4, respectfully requests that the Court place this matter on an expedited briefing schedule and set a hearing to occur as soon as practicable after the five-day notice period.

**Facts**

Agreements to Arbitrate

In or around 2018, Carolina Legal's predecessor in interest, Meg Sohmer Wood, PLLC, d/b/a Carolina Legal Services, entered into a Services Agreement (the "Agreement") with CCS, wherein CCS would provide certain marketing, lead generation, and administrative non-legal support services to Carolina Legal. On August 1, 2019, Carolina Legal Services, by that time owned by Daniel Rufty Legal, PLLC, entered into an Amendment to Services Agreement (the "Amendment"). Each of CCS' claims in arbitration relate to the Agreement or otherwise arise out of the performance or non-performance of the Agreement.

The Agreement and Amendment contain two pertinent arbitration provisions. First, Part 9(f) of the Agreement contains the following broad arbitration provision (the "9(f) Clause"):

> Arbitration. Each signatory hereto hereby agrees that in the event of any dispute arising out of or by reason of this Agreement or the Services rendered or contemplated hereunder, or any other disagreement of any nature, type or description regardless of the facts or legal theories which may be involved, such dispute shall be resolved by confidential binding arbitration before American Arbitration Association ("AAA"), pursuant to the Federal Arbitration Act (9 U.S.C. 1, et seq.). Such dispute will be submitted to confidential binding arbitration only in Charlotte, North Carolina. Arbitration proceedings may be commenced by any signatory to this Agreement by giving the other parties hereto written notice thereof, and the proceedings shall be governed by the rules of AAA. The arbitrator's award in any such proceeding shall be final and binding, and a judgment upon such award may be enforced by any court of competent jurisdiction. Each signatory hereby agrees to submit to the jurisdiction of any state or federal court sitting in Charlotte, North Carolina in any action or proceeding arising out of or relating to the enforcement of the arbitration provisions of this Agreement. Each signatory hereto hereby agrees to waive any defense of inconvenient forum to the maintenance of any action or proceeding so brought in Charlotte, North Carolina, and each signatory hereto waives any bond, surety, or other security that may be required of any other signatory with respect thereto. Notwithstanding the foregoing, as set forth elsewhere in this Agreement, there is a limited expedited right of arbitration.

That "limited expedited right of arbitration" appears in Part 2(g) of the Agreement (the "2(g) Clause"), which provides as follows:

> Processors. CAROLINA will consult with SERVICER before any change in payment processors based upon CAROLINA's determination of the best interests of its Applicable Clients. CAROLINA agrees that any payment processor must be independent of CAROLINA and SERVICER. The parties further agree that it may be advantageous to use separate processors for payment of fees and for consumer savings. The terms of any processing fee agreement must prohibit the freezing of any distribution of funds to SERVICER unless (i) this Agreement is terminated pursuant to the terms of Section 4, in which case the provisions of Section 4 shall govern, or (ii) (A) CAROLINA has provided to SERVICER and the payment processor a copy of the claim and demand for payment at least forty-eight (48) hours in advance of any payment if such demand constitutes an Accelerated Set-Off Claim (as defined in Section 2(h)), or at least thirty (30) days in advance if such demand is based on the indemnification provision or contribution provision of this Agreement; (B) the amount requested is not greater than (1) the total obligation of SERVICER on the particular matter as set forth in this Agreement, less (2) the amount available to CAROLINA in the Escrow Account (as defined in Section 3(a)(i)) plus the amount (if any) SERVICER has already paid in respect of the applicable matter as of the date the demand is delivered to the payment processor; (C) the matter for which CAROLINA seeks such funds as set forth in the demand meets the definition of Accelerated Set-Off Claim or the requirements of the indemnification provision or contribution provision of this Agreement; and (D) in the event of an Accelerated Set-Off Claim, any one of CAROLINA, CAROLINA's owners, CAROLINA's attorney-members, attorney employees, attorney contractors or local attorneys, is a defendant party to the relevant action or suit. <u>In the event that CAROLINA diverts funds from SERVICER as permitted under this Agreement, and SERVICER believes that CAROLINA is not entitled to the full amount that is being withheld from it and SERVICER exercises its dispute resolution rights under Section 9(f), then the expedited Judicial Arbitration and Mediation Service rules shall apply instead of the provisions set forth in Section 9(f), with the notice of arbitration and actual arbitration being completed in less than a month.</u>

(Emphasis added).[4]

---

[4] The Amendment also contains an arbitration clause in its Section 12 (the "Amendment Clause"). The Amendment Clause is not discussed at length herein because there is no serious argument for its applicability to the claims in the Demand. The clause, by its plain language, applies only to claims arising under the Amendment, and all of the claims in the Demand arise under the original Agreement, not the Amendment. In any event, that clause, like the 9(f) Clause, would require arbitration before the AAA.

The JAMS Demand in Arbitration

In November 2020, Carolina Legal terminated the Agreement. (Pet. ¶ 12.) On or about December 3, 2020, CCS filed the Demand with Judicial Arbitration and Mediation Services, Inc. ("JAMS"), purportedly in accordance with the 2(g) Clause. (Pet. ¶ 13.) The Demand purports to state three claims: for breach of contract, for breach of the covenant of good faith and fair dealing, and for declaratory relief. (Demand ¶¶ 11-22.) CCS specifically alleges that "Carolina Legal breached the Service Agreement by withholding fees that CCS was entitled to under the terms of the Service Agreement, despite a lack of notice of CCS's breach of its obligations and despite Carolina Legal continuing to operate and provide legal services to its clients, within the scope of the services contracted to be provided by CCS under the Service Agreement." (Demand ¶ 13.) As a result of the alleged breach, CCS seeks damages from Carolina Legal in the amount of $312,673.37 through November 13, 2020, plus an amount equal to $20,000 per day from November 13, 2020, through an unspecified date. (Demand p 3.) The Demand also seeks arbitration pursuant to JAMS' expedited rules, to occur within one month of the date of the Demand. (Demand ¶ 4.)

For the following reasons, the Agreement requires CCS to arbitrate the claims in its Demand, if at all, before the AAA.

**Argument**

The Court should grant the Petition pursuant to the Federal Arbitration Act ("FAA") and compel the parties to arbitrate, if at all, before the AAA. The FAA governs the parties' agreement to arbitrate. *See generally* 9 U.S.C. § 1, *et seq.* The primary purpose of the FAA "is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *NCR Corp. v. Jones*, 157 F. Supp. 3d 460, 463 (W.D.N.C. 2016) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559

U.S. 662, 682 (2010)). Thus, § 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[5] 9 U.S.C. § 4.

Courts apply § 4 in two steps. "[T]he first duty of the district court when reviewing an arbitration proceeding under section 4 of the Act is to conduct a substantive arbitrability inquiry—meaning the court 'engages in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists and that the specific dispute falls within the scope of that agreement.'" *Glass v. Kidder Peabody & Co.*, 114 F/3d 446. 453 (4th Cir. 1997) (quoting *PaineWebber, Inc. v. Hartman*, 921 F.2d 507, 511 (3d Cir. 1990)). Then, "[i]f the court determines that an agreement exists and that the dispute falls within the scope of the agreement," it "must refer the matter to arbitration." *Id.* Here, there is no serious dispute as to the validity of the parties' agreement to arbitrate: the question is which arbitration clause governs the claims in the Demand?

North Carolina law plays a role in the Court's analysis under § 4. "The interpretation of arbitration agreements is governed by state rules of contract interpretation." *Jones*, 157 F. Supp. 3d at 463-64. Here, the Agreement contains a choice of law clause in favor of North Carolina law. (Agreement ¶ 9(e)). Under North Carolina law, "the court must read 'the contract for indications of the parties' intent at the moment of execution" and "[i]ntent is derived not from a particular contractual term but from the contract as a whole." *Id.* at 464 (quoting *North Carolina v. Philip Morris USA, Inc.*, 359 N.C. 7632, 618 S.E.2d 219, 225 (2005)).

---

[5] Section 4 requires the petitioner to seek such relief in a federal district court "which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. For the reasons stated in the Petition, the Court would have diversity jurisdiction over the dispute that Respondent seeks to arbitrate before JAMS. (Pet. ¶ 5.)

Under the FAA and North Carolina law, the 9(f) Clause governs this dispute. The 9(f) Clause applies to "any dispute arising out of or by reason of this Agreement or the Services rendered or contemplated hereunder, or any other disagreement of any nature, type or description regardless of the facts or legal theories which may be involved." (Agr. ¶ 9(f).) The Demand includes claims that Carolina Legal breached the payment terms of the Agreement, that Carolina Legal breached its implied covenant of good faith and fair dealing, and that CCS is entitled to some unspecified declaration of the parties' rights and obligations under the Agreement. (Demand ¶¶ 11-22.) Those claims unquestionably comprise one or more "dispute[s] arising out of or by reason of [the] Agreement" and they must, therefore, be arbitrated before the AAA.

Rather than honor its commitment to arbitrate before the AAA, CCS attempts to blitzkrieg Carolina Legal through the 2(g) Clause's selection of JAMS' expedited procedures, but CCS' claims are a square peg, and the 2(g) Clause is a round hole. The 2(g) Clause applies only where the parties agree that Carolina Legal is entitled to withhold fees from CCS pursuant to Part 2(g), *see* (Agreement ¶ 2(g) ("[i]n the event that [Carolina Legal] diverts funds from [CCS] <u>as permitted under this Agreement</u>" (emphasis added)), and CCS disputes <u>the amount</u> of the funds properly subject to diversion, *see* Ex. A, ¶ 2(g) ("and [CCS] believes that [Carolina Legal] is not entitled to the full amount that is being withheld from it"). That is, the 2(g) Clause applies only to the narrow circumstance in which CCS agrees that Carolina Legal had a valid basis to withhold fees under the Agreement and that Carolina Legal followed the proper procedure to withhold fees under the Agreement, but that Carolina Legal miscalculated the amount of fees withheld. The 2(g) Clause provides for the quick and efficient resolution of a mathematical dispute, not the hurried disposition of complex and competing legal and factual claims concerning the parties' rights and obligations under the Agreement.

The Rule 2(g) Clause is thus much too narrow to encompass CCS' claims. The Demand's First Cause of Action, for breach of contract, alleges that "CCS performed all, or substantially all of its obligations under the Service Agreement and has continued to do so," and that "Carolina Legal breached the Service Agreement by withholding fees that CCS was entitled to under the terms of the Service Agreement, despite a lack of notice of CCS's breach of its obligations and despite Carolina Legal continuing to operate and provide legal services to its clients." (Demand ¶¶ 12-13.) If proven, CCS' allegations would establish that Carolina Legal had no basis to withhold any funds from CCS under Part 2(g), rather than that Carolina Legal had "divert[ed] funds from [CCS] as permitted." Similarly, the Demand's Second Cause of Action alleges that "CCS performed the obligations required of it under the Service Agreement, except to the extent such performance may have been excused by the actions of the Respondent or by operation of law" and that "Carolina Legal unfairly interfered with CCS's right to receive the benefits of the Service Agreement as set forth above by withholding fees owed to CCS." (Demand ¶¶ 17-18.) Again, if true, these allegations would show not that Carolina Legal improperly withheld too much in fees on otherwise proper grounds, but rather that Carolina Legal had no right to withhold fees to begin with. Finally, the Demand's Third Cause of Action, for declaratory relief, makes no effort at all to fit within the confines of Part 2(g). Instead, it broadly and vaguely seeks "a judicial determination regarding the parties' respective rights and duties under the Service Agreement." (Demand ¶ 22.) Nothing in the 2(g) Clause even arguably authorizes a JAMS claim for such broad declaratory relief.

The Demand, by contrast, presumes that the 2(g) Clause covers any arbitration involving CCS's demand for payment allegedly due under the Agreement; but that reading of the Clause is utterly untenable, for two reasons. First, it defies logic that the drafters of the Agreement would

- 9 -
Case 3:21-cv-00054-FDW-DSC   Document 1-1   Filed 02/03/21   Page 9 of 12

write such a simple rule in such a complicated fashion. The 2(g) Clause begins with a limiting principle: it says it applies "[i]n the event that [Carolina Legal] diverts funds from [CCS] as permitted under this Agreement, and [CCS] believes that [Carolina Legal] is not entitled to the full amount." If the drafters intended any dispute over non-payment to be covered by Part 2(g), they could have simply said that "any dispute over non-payment of fees due to CCS," or "any dispute over the withholding of fees under this Part 2(g)" shall be arbitrated under JAMS's expedited procedures. The parties did not use that simple language because they did not intend the 2(g) Clause to have such a broad scope. Instead, they intended to create a narrow exception to the 9(f) Clause's use of the AAA and the AAA Commercial Arbitration Rules that would allow for the quick resolution of what is, essentially, an accounting question: whether Carolina Legal had correctly identified the fees that it could withhold on otherwise proper grounds.

Second and relatedly, CCS' interpretation of the 2(g) Clause would render an arbitration under the 9(f) Clause unworkable, and this case illustrates that point. Here, Carolina Legal terminated the Agreement with CCS. That termination, and the multiple, material breaches on the part of CCS that preceded that termination, form the reason for which CCS has not received payment. The 9(f) Clause requires Carolina Legal and CCS to arbitrate those claims before the AAA, but, the Demand reflects the view that CCS' counterclaim for payment owed would be subject to the 2(g) Clause's expedited arbitration provision, necessarily opening the door to the risk of inconsistent and unduly rushed outcomes.

The proper, harmonious interpretation of the Agreement treats the 2(g) Clause as applicable only to disputes over Carolina Legal's math, with the 9(f) Clause governing the arbitration of every other claim. That interpretation is consistent with the plain text of the Agreement and prevents the host of problems created by multiple arbitrations before multiple arbitrators involving the same

parties and subject matter. By use of the AAA Commercial Rules, rather than the expedited rules, that interpretation also ensures procedural fairness and a full opportunity for both parties to resolve their dispute on its merits.

Finally, this is not a case in which the FAA requires the Court to permit a JAMS arbitrator to decide whether it has jurisdiction over the Demand. As a general matter, courts, not arbitrators, decide issues of substantive arbitrability (e.g., whether an agreement to arbitrate exists and the scope of that agreement). *Kabba v. Rent-A-Center, Inc.*, 730 F. App'x 141, 142 (4th Cir. Apr. 13, 2018). Parties can delegate those issues to an arbitrator if they do so in clear and unmistakable terms, including, in some instances, through the incorporation of arbitral rules that give the arbitrator the power to decide the scope of his or her own jurisdiction. *See Simply Wireless, Inc. v. T-Mobile U.S., Inc.*, 877 F.3d 522, 528 (4th Cir. 2017) *overruled on other grounds by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019). But, at least as to 2(g) Clause arbitrations, the parties have not made that delegation here. The 2(g) Clause contains no express reference to such delegation, and it incorporates only the JAMS "expedited . . . rules"—that is, Rules 16.1 and 16.2 of the JAMS Commercial Arbitration Rules and Procedures[6]—which likewise make no reference to such delegation.

For that reason, the Court, not the JAMS arbitrator, must decide the scope of the 2(g) Clause and, for the reasons discussed above, the Court should conclude that the 2(g) Clause does not apply, that the 9(f) Clause governs this dispute, and that CCS must arbitrate, if at all, before the AAA.

---

[6] Rules 16.1, 16.2, JAMS Commercial Arbitration Rules and Procedures, https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-17.

- 11 -
Case 3:21-cv-00054-FDW-DSC    Document 1-1    Filed 02/03/21    Page 11 of 12

## Conclusion

Carolina Legal has the right under § 4 of the FAA to arbitrate its dispute with CCS before the forum that the parties chose for that arbitration: the AAA. For the foregoing reasons, the Court should grant the Petition, order CCS to withdraw its JAMS Demand, and order CCS to arbitrate the claims in that Demand, if at all, before the AAA, in accordance with Part 9(f) of the parties' Agreement.

This 3rd day of February, 2021.

Respectfully submitted,

**WEAVER, BENNETT & BLAND, P.A.**

By: /s/ Bo Caudill
Bo Caudill
NC Bar No. 45104
bcaudill@wbbatty.com
196 N. Trade St.
Matthews, NC 28105
Tel: (704) 844-1400
Fax: (704) 845-1503
*Counsel for Carolina Legal*