IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DANIEL RUFTY LEGAL, PLLC, d/b/a Carolina Legal Services,<br><br>    Petitioner,<br><br>v.<br><br>CAROLINA CLIENT SERVICES, LLC,<br><br>    Respondent. | Civil Action No. 3:21-cv-00054 |

**CAROLINA CLIENT SERVICES, LLC'S MEMORANDUM IN RESPONSE TO
<u>VERIFIED PETITION TO COMPEL ARBITRATION</u>**

Respondent Carolina Client Services, LLC ("CCS") submits this Memorandum in Response to the Verified Petition to Compel filed by Daniel Rufty Legal, PLLC d/b/a Carolina Legal Services ("Carolina Legal") (collectively, the "Parties"). For the reasons stated below, this Court should not enjoin the pending arbitration filed by CCS against Carolina Legal before JAMS.

**INTRODUCTION**

This petition is Carolina Legal's second attempt to forestall the valid arbitration that is currently before JAMS. In November 2020, Carolina Legal instructed its payment processor to withhold service fees owed to CCS under the Parties' Service Agreement, as amended. *See* **Exhibit 1**. That same month, with the amount withheld growing *by approximately $20,000 per day*, CCS filed an arbitration demand in JAMS pursuant to the Service Agreement.

Carolina Legal filed a Motion to Dismiss the JAMS proceeding, arguing not that arbitration was improper but that the Service Agreement required the instant dispute to be arbitrated before the American Arbitration Association ("AAA"). JAMS staff initially rejected

113421206v3

Case 3:21-cv-00054-FDW-DSC   Document 7   Filed 02/17/21   Page 1 of 20

this argument, concluding that JAMS has been presented with an agreement that provides for arbitration before JAMS. The same letter explained that the arbitrator, once appointed, *had the authority to evaluate this same issue again*. An arbitrator has now been appointed, a preliminary conference is pending, and the arbitrator will decide the proper forum for this matter.

Despite the fluidity in the JAMS arbitration proceeding, Carolina Legal has filed this Petition. The Petition is improper for at least four reasons.

*First*, as a procedural matter, Carolina Legal mischaracterizes its own action as a Petition to Compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. But arbitration is *already occurring* before JAMS. Carolina Legal actually seeks to enjoin the pending JAMS arbitration because it alleges arbitration (which is undisputedly allowed) is pending before the wrong forum. At a minimum, this Court should appropriately apply the four factors under *Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) that apply when a preliminary injunction is requested.

*Second*, the Fourth Circuit in *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522 (4th Cir. 2017) has already concluded that a commercial arbitration agreement that incorporates JAMS Rules delegates the issue of arbitrability to the arbitrator, not the court. This delegation-by-incorporation is present in the Service Agreement, which states: "the expedited Judicial Arbitration and Mediation Service rules shall apply." **Exhibit 1**, at Section 2(g). The Court's review should end here, reserving the question of arbitrability to the JAMS arbitrator.

*Third*, because the Parties agree that the dispute – whether Carolina Legal is withholding fees from CCS – is arbitrable, it is within the arbitrator's jurisdiction to decide the correct forum. It certainly may be debated whether the parties – through including two separate arbitration provisions, which are triggered based on the type of dispute, in the same Service Agreement – established an optimal alternative dispute resolution structure. However, what is clear from the

2

four corners of the agreement is that the Parties did *not* intend for that selection to be determined in federal court versus in an arbitration forum.

*Fourth*, even if this Court took the unnecessary step to evaluate the proper arbitration forum for the instant dispute, the language of the Parties' Service Agreement demonstrates that JAMS, not AAA, is the appropriate forum *for the instant dispute*. This is because Section 2(g) of the Service Agreement mandates that if CCS believes that Carolina Legal has improperly withheld fees owed to CCS, "then the expedited Judicial Arbitration and Mediation Service rules shall apply *instead of the provisions set forth in Section 9(f)*" which provides for arbitration before AAA. **Exhibit 1**, at Section 2(g) (emphasis added). Whether Carolina Legal improperly withheld fees owed to CCS is the subject matter of CCS's arbitration demand. *See* **Exhibit 2**, CCS Demand for Arbitration, ¶¶ 1, 7-9.

## FACTUAL BACKGROUND

In April 2018, Carolina Legal entered into a Service Agreement with CCS that required CCS to provide specific services for Carolina Legal and its clients, under the direct supervision of Carolina Legal. *See* **Exhibit 1**, at Section 2(b).[1] In accordance with a per-client fee schedule established by the Service Agreement, CCS is paid fees for its services. *See id.* These fees are paid to CCS by a third-party payment processor[2] that is responsible for collecting fees from Carolina Legal's clients and then distributing the fees to CCS. *See id.*, at Section 2(c).

---

[1] In 2019, CCS and Carolina Legal entered into an Amendment to the Service Agreement; however, the Parties agree that this amendment (and its arbitration clause) is inapplicable to this action. *See* Carolina Legal Memorandum of Law in Support of Verified Petition to Compel Arbitration, at 5 n 4 ("Carolina Legal Memo in Support").

[2] Carolina Legal and the payment processor contract directly and without input from CCS. While the Service Agreement provides that CCS shall be named as third-party beneficiary, *see* **Exhibit 1**, at Section 2(g), Carolina Legal controls whether payment is made by the payment processor to CCS.

The Service Agreement provides <u>two separate arbitration provisions</u>.  First, **Section 9(f)** of the Service Agreement provides a *general arbitration clause* wherein the parties can seek relief before AAA (hereinafter "General AAA Arbitration Clause"), while explaining that a "limited expedited right of arbitration" exists:

> <u>Arbitration.</u> Each signatory hereto hereby agrees that in the event of any dispute arising out of or by reason of this Agreement or the Services rendered or contemplated hereunder, . . . such dispute shall be resolved by confidential binding arbitration before [the] American Arbitration Association ("AAA"),. . . *Notwithstanding the foregoing, as set forth elsewhere in this Agreement, there is a limited expedited right of arbitration.*

*Id.*, at Section 9(f) (emphasis added).[3]

Second, the above-referenced "limited expedited right of arbitration" is contained in **Section 2(g)** of the Service Agreement (hereinafter "Limited JAMS Arbitration Clause").  The Limited JAMS Arbitration Clause is triggered "instead of the provisions set forth in Section 9(f)"

---

[3] In full, the General Arbitration Clause states:

> <u>Arbitration.</u> Each signatory hereto hereby agrees that in the event of any dispute arising out of or by reason of this Agreement or the Services rendered or contemplated hereunder, or any other disagreement of any nature, type or description regardless of the facts or legal theories which may be involved, such dispute shall be resolved by confidential binding arbitration before American Arbitration Association ("AAA"), pursuant to the Federal Arbitration Act (9 U.S.C. 1, et seq.). Such dispute will be submitted to confidential binding arbitration only in Charlotte, North Carolina. Arbitration proceedings may be commenced by any signatory to this Agreement by giving the other parties hereto written notice thereof, and the proceedings shall be governed by the rules of AAA. The arbitrator's award in any such proceeding shall be final and binding, and a judgment upon such award may be enforced by any court of competent jurisdiction. Each signatory hereby agrees to submit to the jurisdiction of any state or federal court sitting in Charlotte, North Carolina in any action or proceeding arising out of or relating to the enforcement of the arbitration provisions of this Agreement. Each signatory hereto hereby agrees to waive any defense of inconvenient forum to the maintenance of any action or proceeding so brought in Charlotte, North Carolina, and each signatory hereto waives any bond, surety, or other security that may be required of any other signatory with respect thereto. Notwithstanding the foregoing, as set forth elsewhere in this Agreement, there is a limited expedited right of arbitration.

when CCS "believes" Carolina Legal is improperly withholding fees – the substantive issue of

CCS's arbitration demand:

> … The terms of any processing fee agreement must prohibit the freezing of any distribution of funds to SERVICER unless (i) this Agreement is terminated pursuant to the terms of Section 4, in which case the provisions of Section 4 shall govern, or (ii) [Carolina Legal presents a demand for an accelerated set-off claim and/or indemnification] . . . *In the event that [Carolina Legal] diverts funds from [CCS] as permitted under this Agreement, and [CCS] believes that [Carolina Legal] is not entitled to the full amount that is being withheld from it and [CCS] exercises its dispute resolution rights under Section 9(f),* **then the expedited Judicial Arbitration and Mediation Service rules shall apply instead of the provisions set forth in Section 9(f)**, *with the notice of arbitration and actual arbitration being completed in less than a month.*

Emphasis added.[4]

---

[4] In full, the Limited JAMS Arbitration Clause states:

<u>Processors.</u> CAROLINA will consult with SERVICER before any change in payment processors based upon CAROLINA's determination of the best interests of its Applicable Clients. CAROLINA agrees that any payment processor must be independent of CAROLINA and SERVICER. The parties further agree that it may be advantageous to use separate processors for payment of fees and for consumer savings. The terms of any processing fee agreement must prohibit the freezing of any distribution of funds to SERVICER unless (i) this Agreement is terminated pursuant to the terms of Section 4, in which case the provisions of Section 4 shall govern, or (ii) (A) CAROLINA has provided to SERVICER and the payment processor a copy of the claim and demand for payment at least forty-eight (48) hours in advance of any payment if such demand constitutes an Accelerated Set-Off Claim (as defined in Section 2(h)), or at least thirty (30) days in advance if such demand is based on the indemnification provision or contribution provision of this Agreement; (B) the amount requested is not greater than (1) the total obligation of SERVICER on the particular matter as set forth in this Agreement, less (2) the amount available to CAROLINA in the Escrow Account (as defined in Section 3(a)(i)) plus the amount (if any) SERVICER has already paid in respect of the applicable matter as of the date the demand is delivered to the payment processor; (C) the matter for which CAROLINA seeks such funds as set forth in the demand meets the definition of Accelerated Set-Off Claim or the requirements of the indemnification provision or contribution provision of this Agreement; and (D) in the event of an Accelerated Set-Off Claim, any one of CAROLINA, CAROLINA's owners, CAROLINA's attorney-members, attorney employees, attorney contractors or local attorneys, is a defendant party to the relevant action or suit. <u>In the event that CAROLINA diverts funds from SERVICER as permitted under this Agreement, and SERVICER believes that CAROLINA is not entitled to the full amount that is being withheld from it and</u>

5

On or about November 2020, Carolina Legal began withholding service fees owed to CCS. As of December 18, 2020, Carolina Legal had withheld approximately $532,000 from CCS.

**PROCEDURAL HISTORY**

On December 3, 2020, CCS filed an Arbitration Demand asserting that Carolina Legal improperly withheld fees to which CCS is entitled under the Service Agreement. *See* **Exhibit 2**. On December 9, 2020, JAMS issued a Commencement Letter. The next day, Carolina Legal filed a Motion to Dismiss arguing that AAA, rather than JAMS, was the correct arbitration forum for this dispute. *See* **Exhibit 3**. CCS filed a response in opposition to Carolina Legal's Motion to Dismiss. *See* **Exhibit 4**. On January 5, 2021, JAMS sent a letter to the Parties stating in full:

> We have received and reviewed the correspondence from the Parties in the above referenced matter.
>
> ***JAMS has been presented with an agreement that provides for arbitration at JAMS.*** Therefore, we intend to move forward and appoint an arbitrator. The Parties may participate in the arbitration selection process without waiving the arguments that have been presented to date. ***Any issues regarding jurisdiction and/or the arbitration agreement should be directed to the arbitrator, once appointed.***

**Exhibit 5** (emphasis added). The January 5 Letter's statement that "[a]ny issues regarding jurisdiction and/or the arbitration agreement should be directed to the arbitrator is consistent with the authority granted to a JAMS arbitrator under Rule 11(b) which states in full:

> *Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought*, and who are proper Parties to the Arbitration, ***shall be submitted to and ruled on by the Arbitrator. The***

---

SERVICER exercises its dispute resolution rights under Section 9(f), then the expedited Judicial Arbitration and Mediation Service rules shall apply instead of the provisions set forth in Section 9(f), with the notice of arbitration and actual arbitration being completed in less than a month.

(emphasis added)

6

Case 3:21-cv-00054-FDW-DSC    Document 7    Filed 02/17/21    Page 6 of 20

> *Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter*.

JAMS Comprehensive Arbitration Rules and Procedures (effective July 1, 2014) at 7, attached as **Exhibit 6** (emphasis added). On January 8, 2021, a JAMS arbitrator was appointed. On January 27, 2021, because no action had been taken by the arbitrator, counsel for CCS contacted JAMS to determine the status of the matter. JAMS responded that a preliminary conference had not been scheduled because Carolina Legal had not paid its share of the initial retainer required to proceed under JAMS Rules.

On January 28, 2021, counsel for Carolina Legal sent a letter demanding that CCS withdraw its JAMS petition. Carolina Legal's Petition, which seeks "an order compelling CCS to withdraw its Demand in Arbitration" and "an order staying the JAMS arbitration," followed. *See* Verified Petition to Compel, Prayer for Relief ¶¶3,4 ("Pet."). The Petition does not argue that under the terms of the Service Agreement this dispute is destined for arbitration, but rather that JAMS is not the appropriate arbitration forum. *See* Carolina Legal Memo in Support, at 7("[T]he question is <u>which</u> arbitration clause governs the claims in the Demand?").

Due to the increasing amount of fees withheld by Carolina Legal, and with the goal of moving forward with the JAMS proceeding, CCS has advanced Carolina Legal's share of the costs owed to JAMS.

On February 16, 2021, Carolina Legal filed its own action before AAA alleging that CCS breached the Parties' Service Agreement.

## STANDARD OF REVIEW

### I. Because Carolina Legal Seeks to Enjoin a Pending Arbitration, Carolina Legal Must Demonstrate That a Preliminary Injunction Is Warranted.

While entitled as a Verified Petition to Compel Arbitration, Carolina Legal seeks to enjoin the current arbitration proceeding before JAMS. *See* Pet., Prayer for Relief ¶¶3,4. While a

7

court's ability to stay litigation and compel arbitration in accordance with an arbitration agreement are embodied in Sections 3 and 4 of the Federal Arbitration Act, *see* 9 U.S.C. §§ 3, 4, a court's ability to halt a *pending arbitration proceeding* is governed by the standard of obtaining a preliminary injunction. *See e.g. Charlotte Mecklenburg Board of Education v. 34 ED, LLC*, 2020 WL 3971921, at *3 (W.D.N.C., 2020) (Mullen, J.) (collecting cases).

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). To obtain a preliminary injunction, Carolina Legal has the burden of establishing each of the following: (1) that they are likely to suffer irreparable harm in the absence of a preliminary injunction issuing; (2) that they are likely to succeed on the merits; (3) that the balance of equities tips in their favor; and (4) that the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Each of these factors must be "satisfied as articulated," and that standard is only met through a "clear showing" by Carolina Legal. *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds by* 559 U.S. 1089 (2010).

### II. Arbitrators – Not Courts – Preside Over Disputes Over the Arbitrability of Arbitration Clauses When the Arbitration Clause Demonstrates Clear and Unmistakable Evidence that This Was the Intent of the Parties.

When, as here, neither party disputes that a valid contract has been formed, *see* Carolina Legal Memo in Support, at 7; *see e.g. Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010), "[a]rbitrability disputes" require the "two-step inquiry" outlined in *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96 (4th Cir. 2012). "First, [the court must] determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court. Second, if [the court] conclude[s] that the court is the proper forum in which to adjudicate

8

arbitrability, [the court] then decide[s] *whether* the dispute is, in fact, arbitrable." *Id.* at 101 (emphasis in original). Jurisdiction to resolve the arbitrability of an agreement generally resides with the district court unless a court finds "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* at 102.

**ARGUMENT**

**I.     Carolina Legal Has Improperly Pled Its Motion to Enjoin the Pending JAMS Arbitration as a Petition to Compel.**

Sections 3 and 4 of the Federal Arbitration Act entail the specific enforcement mechanisms by which courts may order arbitration to commence. Under Section 3, a party may request a mandatory stay of litigation pending the arbitration of any issue subject to an arbitration agreement. *See* 9 U.S.C. § 3. And under Section 4, a party may request an order compelling arbitration in accordance with an arbitration agreement. *See* 9 U.S.C. § 4. But these mechanisms do not apply to the instant dispute – where an arbitration demand has already been filed before JAMS. Instead, Carolina Legal's Verified Petition to Compel seeks "an order compelling CCS to ***withdraw*** its Demand in Arbitration" and "an ***order staying*** the JAMS arbitration." *See* Pet., Prayer for Relief ¶¶3,4 (emphasis added). To enjoin the pending JAMS proceeding under the guise of Sections 3 and 4 of the Federal Arbitration Act is procedurally improper.

**II.    Carolina Legal's Motion to Enjoin the Pending JAMS Arbitration Should Be Denied Because It Has Failed to Establish Any of the *Winter* Factors.**

"While the FAA only explicitly empowers courts to compel arbitrations," courts in the Fourth Circuit have utilized the factors for a preliminary injunction established by *Winter* when "enjoin[ing] proceedings when the parties never agreed to submit their disputes to arbitration." *See Charlotte Mecklenburg Board of Education v. 34 ED, LLC*, 2020 WL 3971921, at *3 (W.D.N.C. 2020) (collecting cases utilizing *Winter* factors); *see also UBS Financial Services*

9

*Inc. v. Carilion Clinic*, 880 F. Supp. 2d 724, 726 (E.D. Va. 2012) (same; enjoining a pending arbitration).

As detailed *supra* at 8, a preliminary injunction is an extraordinary remedy and Carolina Legal bears the burden of demonstrating *each* of the following factors: [1] that the moving party is likely to succeed on the merits, [2] that the moving party is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in the movant's favor, and [4] that an injunction is in the public interest. *See Winter*, 5 U.S. 7. Carolina Legal cannot satisfy any of the *Winter* factors.

### A. <u>**CCS Has Not Demonstrated It Is Likely to Succeed on the Merits.**</u>

1. <u>The Service Agreement and Limited JAMS Arbitration Clause Incorporates JAMS Rules Which Delegates the Issue of Arbitrability to the Arbitrator, Not the Court.</u>

Pursuant to the Federal Arbitration Act, "the question of who decides arbitrability is itself a question of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). Jurisdiction to resolve the arbitrability of an agreement generally resides with the district court unless a court finds "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Peabody Holding Co., LLC*, 665 F.3d at 102.

Here, the Limited JAMS Arbitration Clause in the Service Agreement states:

> In the event that [Carolina Legal] diverts funds from [CCS] as permitted under this Agreement, and [CCS] believes that [Carolina Legal] is not entitled to the full amount that is being withheld from it and [CCS] exercises its dispute resolution rights under Section 9(f), ***then the expedited Judicial Arbitration and Mediation Service rules shall apply…***

**Exhibit 1**, Section 2(g) (emphasis added).

In *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522 (4th Cir. 2017), *abrogated on other grounds by Henry Schein, supra*, the Fourth Circuit evaluated ***<u>the exact issue before this Court</u>***: "whether the parties' express incorporation of JAMS Rules constitutes clear and

10

unmistakable evidence of the parties' intent to delegate to the arbitrator questions of arbitrability." *Id.* at 527. The "delegation clause" in *Simply Wireless* stated, "[t]he arbitration shall be administered pursuant to the JAMS Comprehensive Rules and Procedures then in effect . . . ," *id.* at 525, and pointed to Rule 11(b) of the JAMS Comprehensive Arbitration Rules & Procedures (**Exhibit 6**, at 7) which provides that:

> Jurisdictional and ***arbitrability disputes***, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought ... ***shall be submitted to and ruled on by the Arbitrator***. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

Emphasis in original. In *Simply Wireless*, the Fourth Circuit concluded that "in the context of a commercial contract between sophisticated parties, the explicit incorporation of JAMS Rules serves as 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability." *Id.* at 528. "Because JAMS Rules expressly delegate arbitrability questions to the arbitrator," the Fourth Circuit concluded that the question of arbitrability was delegated to the JAMS arbitrator to decide, "*and the district court erred* in deciding whether Simply Wireless's claims fall within the scope of the parties' arbitration agreement." *Id.* (emphasis added); *see id.* at 527 (observing that Fifth and Tenth circuits have also "concluded that the incorporation of JAMS Rules constitutes 'clear and unmistakable evidence' of the parties' intent to delegate questions of arbitrability to the arbitrator.").

The district court in *Ward v. Discover Bank*, 2020 WL 1922908 (D.S.C. 2020) recently evaluated whether a court or arbitrator should rule on the arbitrability of an arbitration clause that provided for arbitration before AAA <u>or</u> JAMS in accordance with their rules and procedures. *Id.* at 2. Applying *Simply Wireless*, the trial court concluded "[b]y incorporating the AAA and JAMS rules, however, the parties agreed that disputes over interpretation of the scope of the arbitration clauses are to be determined by an arbitrator. Accordingly, the Court declines to rule

11

Case 3:21-cv-00054-FDW-DSC   Document 7   Filed 02/17/21   Page 11 of 20

on whether the parties' agreements purport to cover the dispute, *finding this question properly reserved to arbitration*." *Id.* at *4 (emphasis added; internal citations and brackets omitted). Accordingly, because the Limited JAMS Arbitration clause agreed to by the Parties in the Service Agreement delegates authority to the arbitrator through stating, "the expedited Judicial Arbitration and Mediation Service rules shall apply," **Exhibit 1**, Section 2(g), determinations of arbitrability are reserved for the JAMS arbitrator.

Carolina Legal briefly argues that the delegation that "the expedited Judicial Arbitration and Mediation Service rules shall apply" only implicates Rules 16.1 and 16.2 of the JAMS Commercial Arbitration Rules and Procedures. *See* Carolina Legal Memo in Support, at 11. This is incorrect in application and leads to absurd results. Expedited JAMS Commercial Arbitration Rules and Procedures utilize all JAMS Rules 1-24, including the Expedited procedures established by Rules 16.1 and 16.2. *See* **Exhibit 6**. Instead, Rules 16.1 and 16.2 provide "a *process* that limits depositions, document requests and e-discovery," *see id.* at 1, Preamble (emphasis added). In doing so, these Rules *complement* and *supplement* the existing standard JAMS Comprehensive Arbitration Rules & Procedures (which includes the Rule 11(b) delegation to the JAMS arbitrator). Indeed, there is no standalone JAMS document that provides for Expedited JAMS procedures. Even more, Rules 16.1 and 16.2 incorporate many of JAMS Commercial Arbitration Rules and Procedures by reference,[5] while expressly removing the application of inapplicable rules.[6] Further, if taken to its logical conclusion, application of only Rules 16.1 and 16.2 would provide the parties no guidance on a host of issues impacting the arbitration, including how to commence an arbitration (Rule 5), arbitration awards (Rule 24),

---

[5] **Exhibit 6**, at 9-10 (Rule 16.2(a) "require[s] compliance with Rule 17(a)); Rule 16.2(d)(i) (requiring application of Rule 17(b)).

[6] *Id.* at 11 (Rule 16.2(h) states "Dispositive motions (Rule 18) shall not be permitted…").

12

confidentiality (Rule 26), enforcement of arbitration awards (Rule 29), fees (Rule 31), and appellate review (Rule 34). *See generally* **Exhibit 6**, at 1-2 (Table of Contents).

This court should follow *Simply Wireless*, reserving for the JAMS arbitrator the question of whether JAMS arbitration is appropriate.

> 2. The Parties Do Not Dispute That This Matter is Arbitrable, and Therefore It Is Not Within the Court's Limited Province to Decide.

Even absent the above-delegation to the arbitrator, because the Parties agree that the Service Agreement is subject to the Federal Arbitration Act – may it be before JAMS or AAA – the court should not accept Carolina Legal's invitation to determine *which arbitration provision* governs. To be arbitrable under the Federal Arbitration Act, the following prongs must be demonstrated:

> (1) the existence of a dispute between the parties,
>
> (2) a written agreement that includes an arbitration provision which purports to cover the dispute,
> (3) a relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and
>
> (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

*Mode v. S-L Distribution Company, LLC*, 2020 WL 1815905, at *2 (W.D.N.C., 2020) (alternation in original) (citing *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016)).

Each prong has been met. Prongs 1 and 2 are met as there is a dispute between CCS and Carolina Legal and this relationship is evidenced through the Service Agreement. Prong 2 is met because regardless of whether the interpretation of Carolina Legal or CCS is right there is a written agreement that covers the instant dispute of whether Carolina Legal is impermissibly holding the fees owed to CCS. *See* **Exhibit 2**, Demand for Arbitration, ¶¶ 1, 7-9. Finally, Prong

13

4 is met because Carolina Legal has refused at every turn to proceed in JAMS by filing a motion to dismiss, failing to pay its portion of the JAMS fees, and filing this petition.  *See supra*, at 7.

Indeed, courts have consistently declared, "[w]hen deciding arbitrability, the *court only determines whether*, as a matter of contract between the parties, the underlying dispute should be resolved in court *or* by arbitration." *Whiteside v. Teltech Corp*., 940 F.2d 99, 102 (4th Cir. 1991) (emphasis added).  Here, the parties agree that the Service Agreement is within the confines of the FAA and the only dispute is what arbitration forum the dispute should be arbitrated in. *See* Carolina Legal Memo in Support, at 7 ("[T]he question is which arbitration clause governs the claims in the Demand?") (emphasis added).

Deferring the decision of the proper arbitration forum to the JAMS arbitrator is consistent with Congress' intended goal: "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22 (1983); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) ("'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'") (quoting *Moses H. Cone Memorial Hospital*, 460 U.S. at  24-25).  Further, the Court's limited province does not mean that this will be the last word on the proper forum.  Instead the JAMS arbitrator stands ready and able to resolve "any issues regarding jurisdiction and/or the arbitration agreement should be directed to the arbitrator, once appointed." **Exhibit 5**.  Therefore, presented with a Service Agreement that neither party disputes provides for arbitration, this Court should allow the arbitrator to perform his role of "determin[ing] jurisdiction and arbitrability."  *See* **Exhibit 6***,* at 7 (Rule 11.2(b)).

### 3. The Language of the Parties' Service Agreement Demonstrates that JAMS, Not AAA, Is the Appropriate Arbitration Forum.

If the Court determines it must delve into the merits of *which arbitration clause applies* to CCS's demand that Carolina Legal improperly withheld the fees owed to CCS, the language of the Service Agreement demonstrates that the Limited JAMS Arbitration Clause governs. In this analysis, North Carolina contract law applies because "the question of whether the parties agreed to arbitrate is resolved by application of state contract law." *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998).

Carolina Legal's position is that the [Limited JAMS Arbitration Clause] applies only to "the narrow circumstance in which Carolina Legal properly withheld payment under the terms of the Agreement, but CCS disputed the amount of the withholding." Carolina Legal Memo in Support, at 1. This reading fails to comport with the proper reading of the Service Agreement for the following reasons:

*First*, as a foundational principle, limited arbitration agreements receive superior rights over general provisions. *See Wood–Hopkins Contracting Co. v. N.C. State Ports Auth.*, 202 S.E.2d 473, 476 (N.C. 1974) ("[W]hen general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics."); *see also* Restatement (Second) of Contracts § 203(c) ("[S]pecific terms and exact terms are given greater weight than general language"). This preference is expressly included in the Limited JAMS Arbitration Clause, by mandating that if CCS believes that Carolina Legal has improperly withheld fees owed to CCS, "then the expedited Judicial Arbitration and Mediation Service rules shall apply *instead of the provisions set forth in Section 9(f) ... .*" **Exhibit 1**, at Section 2(g) (emphasis added).

***Second***, Plaintiff re-writes the words "as permitted" to be "as permissible" or "as allowable." But the words "as permitted under this Agreement" serve to qualify the disputes that may arise under the Limited JAMS Arbitration Clause, specifically funds owed to CCS under the Service Agreement. This reading makes sense because a broad reading of "in the event that [Carolina Legal] diverts funds from [CCS]" could be broadly read to apply to any instance that CCS "believes" Carolina Legal has failed to make proper payment. *See id.*

***Third***, Carolina Legal's "policy" conclusion is unavailing and does not comport with the timing provided for other "accounting matters." Carolina Legal Memo in Support, at 10. Section 2(e) of the Service Agreement allows CCS to audit Carolina Legal "to determine the accuracy and completeness of Fees paid pursuant to this Agreement." In stark contrast to the mandate in the Limited JAMS Arbitration Clause that arbitration be *completed* in 30 days, *see id.*, the Service Agreement *slows down* the potential for legal disputes, dictating that "the parties will attempt for ninety (90) days in good faith to resolve such disagreement *prior to the commencement of any legal action*." *Id.*, at Section 2(e).[7] *See Robbins v. C. W. Myers Trading Post, Inc.*, 117 S.E.2d 438, 440 (N.C. 1960) ("[T]he intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to consider all of

---

[7] Section 2(e) provides:

> Audit Right. During the term of this Agreement, SERVICER shall have the right, upon reasonable advance notice during normal business hours, to audit and inspect (or have its accountants, attorneys or agents audit and inspect) the relevant books and records of CAROLINA to determine the accuracy and completeness of Fees paid pursuant to this Agreement. If SERVICER notifies CAROLINA that, based upon the findings of such audit, SERVICER believes that Fees payable to SERVICER are higher than the amount reported to SERVICER and paid by CAROLINA, the parties will attempt for ninety (90) days in good faith to resolve such disagreement prior to the commencement of any legal action.

**Exhibit 1**.

its parts in order to determine the meaning of any particular part as well as of the whole."); *State v. Philip Morris USA Inc.*, 669 S.E.2d 753, 756 (N.C. App. 2008) ("Intent is derived not from a particular contractual term but from the contract as a whole."). Such "matters of accounting" could not have been resolved more inconsistently.

No, the Expedited JAMS Arbitration Clause was established because Carolina Legal has unilateral control over whether its payment processor pays the fees owed to CCS.[8] Anticipating this potential financial harm – *which is the reason for this dispute* – is why CCS negotiated for this expedited right of arbitration.[9]

> **B. Carolina Legal Has Failed to Demonstrate That It Will Be Harmed, the Equities Tips Towards an Injunction, or the Public Interest Weighs Toward an Injunction.**

In considering motions to enjoin pending arbitrations, courts traditionally have given weight to the harms caused by being "forced to arbitrate a contract to which it did not agree." *Charlotte Mecklenburg Board of Education*, at *6 (collecting cases). But this is not the case here. Both parties agreed that this dispute *is* destined for arbitration. The question is whether the *Winter* factors which all must be demonstrated, *supra*, apply to whether the appropriate forum has been selected.

---

[8] Section 2(c) of the Service Agreement states in relevant part:

> CAROLINA will authorize its payment processor to pay SERVICER the Fees for Services performed by SERVICER for an Applicable Client by ACE or wire transfer of immediately available funds, or as otherwise mutually agreed, not more than three (3) business days following the day on which the applicable portion of the Fee is received by such payment processor.

**Exhibit 1**.

[9] This same concern over payment led CCS to negotiate that it be named a "third-party beneficiary" in "all agreements with all payment processors" in *the sentence immediately following* the Limited Right of Arbitration. This sentence of Section 2(g) states in relevant part: "All agreements with all payment processors hereunder shall explicitly name SERVICER as a third-party beneficiary."

17

As to irreparable harm, any "harm" that results from utilizing JAMS as an arbitration forum (instead of AAA) has been abated and is far too ambiguous. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in [preliminary injunction] consideration is ***irreparable***. Mere injuries, however, substantial, in terms of ... *time and energy* necessarily expended in the absence of a stay are not enough.") (emphasis added). The only perceived harm by CCS in pursuing arbitration through JAMS is the expedited timing because the Service Agreement calls for "notice of arbitration and arbitration to occur in less than a month." **Exhibit 1**, Section 2(g); Carolina Legal Memo in Support, at 3 (CCS filed in JAMS "knowing that Carolina Legal had numerous high value claims against CCS that an expedited proceeding could not facilitate …"); *id.* at 8 ("CCS attempts to blitzkrieg Carolina Legal through the 2(g) Clause's selection of JAMS' expedited procedures"). But this again is a strawman. First and foremost, the argument that this action impedes Carolina Legal's counterclaims is moot because Carolina Legal has now filed its own arbitration demand before AAA alleging the aforementioned "high value claims." Second, in CCS's Motion to Dismiss before JAMS, it acknowledged that the one-month arbitration duration was "impracticable" and "defer[red] to the Arbitrator regarding the appropriate arbitration schedule that balances expediency without neglecting due process concerns." **Exhibit 4**, at 7 n 4. Third, despite the Demand for Arbitration being filed on November 3, 2020 – there still has not been a preliminary conference *over three months later*.

The balance of the equities also tips in CCS's favor. Despite the current lack of movement, CCS has already expended thousands of dollars to file its dispute before JAMS including payment of Carolina Legal's portion of the JAMS fee to move this dispute forward. This was done because Carolina Legal continues to withhold upwards of $500,000 in fees owed to CCS for services rendered.

Finally, the public interest benefits the court's deference to the arbitrator. Congress enacted the Federal Arbitration Act in 1925 to ensure the validity and enforcement of arbitration agreements, thereby encouraging resolution of disputes outside of the court system. The Supreme Court has recognized that the Federal Arbitration Act reflects a Congressional intent to enact "a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The JAMS Arbitrator has already concluded that he is prepared to decide matters related to arbitrability and therefore the public interest is benefitted by this Court deferring to the arbitrator to determine whether JAMS or AAA is the appropriate forum for determining whether Carolina Legal has improperly withheld fees from CCS.

## CONCLUSION

For the above reasons, CCS requests that the court dismiss this petition with prejudice.

Dated: February 17, 2021

          */s/ Jason D. Evans*
Jason D. Evans, N.C. Bar No. 27808
TROUTMAN PEPPER HAMILTON SANDERS LLP
301 S. College Street, 34th Floor
Charlotte, NC 28202
Telephone: (704) 918-1502
jason.evans@troutman.com

Christopher W. Carlson, Jr. (Va. Bar # 93043)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1224
chris.carlson@troutman.com
(motion for admission *pro hac vice* to be filed)

*Attorney for Respondent Carolina Client Services, LLC*

**Certificate of Service**

I hereby certify that on February 17, 2021, I electronically filed the foregoing Memorandum in Response to Verified Petition to Compel Arbitration with the Clerk of the Court by using the CM/ECF system and that a Notice of this filing will be sent by operation of the Court's Electronic Filing System to the below counsel of record:

Bo Caudill, Esq.
bcaudill@wbbatty.com
Matthew M. Villmer
mvillmer@wbbatty.com
WEAVER, BENNETT & BLAND, P.A.
196 N. Trade Street
Matthews, NC 28105

*Counsel for Petitioner Daniel Rufty Legal, PLLC, d/b/a Carolina Legal Services*

               */s/ Jason D. Evans*